UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TURON MAYES,

        Petitioner,                Case Number: 2:13-CV-12742
                                          HON. ARTHUR J. TARNOW

v.

BONITA HOFFNER,

        Respondent.
_____/

## OPINION AND ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS AND GRANTING IN PART A CERTIFICATE OF APPEALABILITY

This matter is before the Court on Turon Mayes' petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Mayes is incarcerated pursuant to convictions for armed robbery, Mich. Comp. Laws § 750.529, and possession of a firearm during the commission of a felony, second offense, Mich. Comp. Laws § 750.227b. He challenges these convictions on the grounds that he was denied due process by the delay between the issuance of an arrest warrant and his arraignment, that his statements to police should have been suppressed, that the prosecutor presented perjured testimony, that he received ineffective assistance of counsel, and that he was denied his right to a speedy trial. Respondent argues that the claims are procedurally defaulted and/or meritless. The Court denies the petition for a writ of habeas corpus.

## I.     Facts and Procedural History

Petitioner's convictions arise from a robbery at the Vintage Wine Shoppe Party Store in Novi. The robbery occurred on January 14, 2008. Petitioner was also linked to two robberies that occurred in Wayne County, one at a gas station in Livonia, another at a 7-Eleven store in Redford Township, and, after his arrest, was questioned about all of these robberies over a two-day period.

Stephen Zuhair testified that he was the only employee working at the Vintage Wine Shoppe at approximately 9:30 p.m., on January 14, 2008, when someone entered the store, pointed a gun at him and demanded that he empty the register drawers. After Zuhair emptied the register drawers, the gunman left the store. Zuhair could not identify the gunman because the gunman was wearing a ski mask over his face.

Novi police detective Michael Wilson testified that a business at a strip mall adjacent to the Vintage Wine Shoppe had a video camera that faced the parking lot where it was believed the gunman headed after leaving the wine store. A gold vehicle was captured on the video leaving the area. Detective Wilson testified that a bulletin was issued to other police departments describing the gold vehicle.

Livonia police officer Brian Duffany testified that, during the early morning hours of January 15, 2008, he heard radio traffic concerning a robbery at a Livonia Speedway gas station. He was also aware the Novi police had issued a description of a gold vehicle believed to be involved in the Vintage Wine Shoppe robbery. Officer Duffany was patrolling the area near the Speedway when he observed a vehicle matching the

description given by the Novi Police Department.  Officer Duffany radioed another police officer, who initiated a traffic stop of the vehicle.  After initially stopping, the driver of the gold vehicle pulled back onto the highway and attempted to flee.  Eventually, the vehicle crashed and the two occupants attempted to run away.  Both occupants, Petitioner and co-defendant Noel Napper, were apprehended.  Petitioner was taken into custody by the Livonia Police Department.  Several police departments, including Novi and Livonia, questioned Petitioner regarding several robberies.  Petitioner eventually admitted his involvement in the robbery of the Vintage Wine Shoppe.

Following a bench trial in Oakland County Circuit Court, Petitioner was convicted of armed robbery and possession of a firearm during the commission of a felony, second offense.  On November 12, 2009, he was sentenced to 12 to 40 years' imprisonment for the armed robbery conviction and five years' imprisonment for the felony-firearm, second offense conviction.

Petitioner filed an appeal of right in the Michigan Court of Appeals. He raised these claims through counsel: (i) lengthy delay between issuance of arrest warrant and arraignment violated due process; and (ii) statement to police should have been suppressed.  Petitioner also raised these claims in a pro per supplemental brief: (i) prosecutor presented perjured testimony; (ii) ineffective assistance of counsel; and (iii) denied right to speedy trial. The Michigan Court of Appeals affirmed Petitioner's convictions.  *People v. Mayes*, No. 296271, 2011 WL 1519355 (Mich. Ct. App. Apr. 21,

2011). Petitioner sought leave to appeal in the Michigan Supreme Court, which the court denied. *People v. Mayes*, 491 Mich. 884 (Mich. March 26, 2012).

Petitioner then filed the pending habeas corpus petition. He raises these claims:

I. Mayes was denied due process by the lengthy delay between the issuance of his arrest warrant and his arraignment eight months later.

II. Mayes's statements to the police should not have been admitted.

III. Mayes was denied his right to a fair trial by the prosecutor's use of perjured testimony.

IV. Mayes was denied his right to the effective assistance of counsel by his counsel's failure to correct the record or impeach prosecution witnesses.

V. Mayes was denied due process by the failure of the state to commence his trial within 180 days, denying him his right to a speedy trial.

## II. Standard of Review

This habeas petition is reviewed under the exacting standards set forth in the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub.L. No. 104-132, 110 Stat. 1214 (Apr. 24, 1996). Under AEDPA, a federal court cannot grant habeas relief with respect to any claim adjudicated on the merits in a state-court proceeding unless the state adjudication of the claim either:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding. 28 U.S.C. § 2254(d)(1), (2).

"A state court's decision is 'contrary to' . . . clearly established law if it 'applies a rule that contradicts the governing law set forth in [Supreme Court cases]' or if it 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [this] precedent.'" *Mitchell v. Esparza*, 540 U.S. 12, 15-16 (2003) (per curiam), quoting *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). "[T]he 'unreasonable application' prong of the statute permits a federal habeas court to 'grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court but unreasonably applies that principle to the facts' of petitioner's case." *Wiggins v. Smith*, 539 U.S. 510, 520 (2003) quoting *Williams*, 529 U.S. at 413. "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011), quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004). "Section 2254(d) reflects the view that habeas corpus is a guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal. . . . As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.* at 786-87 (internal quotation omitted).

To obtain relief under § 2254(d)(2), a petitioner must show an unreasonable determination of fact *and* that the resulting state court decision was "based on" that unreasonable determination. *Rice v. White*, 660 F.3d 242, 250 (6th Cir. 2012).

Lastly, a federal habeas court must presume the correctness of state court factual determinations. See 28 U.S.C. § 2254(e)(1). A petitioner may rebut this presumption only with clear and convincing evidence. *Warren v. Smith*, 161 F.3d 358, 360-61 (6th Cir. 1998).

### III. Discussion

### A. Pre-Arrest Delay

Petitioner's first claim concerns the delay between the time a warrant was issued for his arrest until the time he was arrested, a period of eight months.

The Due Process Clause of the Fifth Amendment provides a defendant limited protection against preindictment delay. *United States v. Lovasco*, 431 U.S. 783, 789 (1977). In determining whether a preindictment delay violates due process, a court must decide whether the delay "violates those fundamental conceptions of justice which lie at the base of our civil and political institutions ... and which define the community's sense of fair play and decency." *Lovasco*, 431 U.S. at 790 (internal quotations omitted). The Sixth Circuit has consistently read *Lovasco* to hold that dismissal for preindictment delay is warranted only when the defendant shows both substantial prejudice to his right to a fair trial and that the delay was intentionally imposed by the government to gain a tactical advantage. *See United States v. Brown*, 959 F.2d 63, 66 (6th Cir.1992). The prosecution

of a defendant following a delay does not necessarily deprive him of due process, even if his defense is somewhat prejudiced by the lapse of time. *Lovasco*, 431 U.S. at 796. "The statutes of limitations, 'which provide predictable, legislatively enacted limits on prosecutorial delay,' serve as the primary safeguard against 'overly stale criminal charges.'" *United States v. Svilvagyi*, 417 F. App'x 472, 479 (6th Cir. 2011). A defendant bears a "heavy burden" on a claim that a pre-arrest delay violated due process. *United States v. Baltimore*, No. 10-3305, 2012 WL 2379890, *3 (6th Cir. June 6, 2012) (citing *United States v. Rogers*, 118 F.3d 466, 477 n. 10 (6th Cir. 1997) (noting that "[t]he standard for pre-indictment delay is nearly insurmountable, especially because proof of actual prejudice is always speculative")).

Here, the Michigan Court of Appeals rejected Petitioner's due process claim because the delay was not engineered by the prosecution to gain a tactical advantage and Petitioner was not substantially prejudiced by the delay. The state court reasoned, in pertinent part:

> While there was an approximate eight-month delay between the time the Novi Police Department secured a criminal complaint and arrest warrant and the time defendant was arraigned, defendant has not demonstrated that prejudice resulted from the delay. Instead, defendant generally asserts that he was prejudiced because the delay denied him the right to timely court-appointed counsel to coordinate the cases between Wayne and Oakland Counties and to advise him of the impact of his actions in the Wayne County case on the Oakland County case. However, defendant does not provide any detail on how earlier appointment of counsel would have aided his defense. Defendant's unsupported statement of prejudice does not satisfy his burden of proving that he was actually and substantially prejudiced. Additionally, defendant does not provide any evidence on how the delay meaningfully impaired his ability to defend against the charges.

7

> Defendant does not provide any detail on the substance of any possible defense to the charges, nor does he provide any detail regarding how the Oakland County appointed counsel coordinating with the Wayne County appointed counsel could have supported a defense. By not identifying any specific prejudice, defendant has not established actual and substantial prejudice.
>
> Defendant also argues that he was actually and substantially prejudiced by the prearrest delay because he did not receive jail credit for the time he was in custody prior to his initial arraignment. However, to warrant dismissal, a prearrest delay must have resulted in actual and substantial prejudice to the defendant's right to a *fair trial*. .... The lack of credit for the time defendant spent in custody prior to his arraignment has nothing to do with his right to a fair trial.
>
> [D]efendant ... contends that the reason for the delay was for the prosecution to gain a tactical advantage, *i.e.*, the prosecution wished to use the Wayne County conviction as MRE 404(b) evidence in the Oakland County case. However, the facts and circumstances surrounding the Wayne County conviction are properly admissible as part of the *res gestae*. *See People v. McGraw*, 484 Mich. 120, 150, 771 N.W.2d 655 (2009).... [T]he delay did not lead to a tactical advantage for the prosecution because the prosecution would have been able to elicit testimony regarding the facts and circumstances surrounding the Wayne County conviction as part of the *res gestae*. ...We hold that the prearrest delay did not violate defendant's due process rights because defendant was not actually or substantially prejudiced by the delay, and there was no evidence that the prosecution intended to gain a tactical advantage.

*Mayes*, 2011 WL 1519355 at *1-2.

This decision was not "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington*, 562 U.S. at 103. First, the state court's decision that the delay was not occasioned by bad faith or designed to gain a tactical decision is supported by the record. Petitioner's argument to the contrary is based upon speculation. Second,

8

Petitioner has not shown that the delay caused actual prejudice. As the Michigan Court of Appeals pointed out, the general claim that Petitioner's defense attorneys could have coordinated with one another is not founded upon any particular allegations of actual prejudice. There is no evidence that the prosecution sought or obtained any tactical advantage from the delay. Habeas relief is denied.

## B. Suppression of Custodial Statement

In his second habeas claim, Petitioner argues that the trial court erred in admitting his statement to police. Petitioner claims that the statement was involuntary because he was sleep-deprived when he made the statement and police induced him to make the statement by promising to assist him in paying his taxes.

The trial court conducted an evidentiary hearing pursuant to *People v. Walker*, 374 Mich. 331 (1965),[1] to determine the voluntariness of Petitioner's statement to police. City of Livonia police detective Dean Langley testified that he was assigned to investigate two robberies that occurred in the early morning hours of January 15, 2008, one in Livonia and one in Westland. He was told two individuals were in custody related to the robberies. One was Petitioner. He and his partner interviewed Petitioner shortly after 1:00 p.m. Petitioner had been taken into custody at approximately 2:00 a.m. Before beginning the interview Detective Langley advised Petitioner of his rights under *Miranda v. Arizona*. He determined that Petitioner was not under the influence of drugs or alcohol,

---

[1] *People v. Walker*, 374 Mich. 331 (1965) requires that an evidentiary hearing be conducted when a defendant challenges the admissibility of a confession.

mentally impaired, or injured. Detective Langley conducted three total interviews – two on January 15 (1:00 and 9:00 p.m) and one on January 16 (1:00 p.m.). Petitioner was advised of his Miranda rights prior to each interview. The first interview ran from approximately 1:15 p.m. until 4:30 p.m. The second interview lasted approximately one hour. The final interview was described as brief.

City of Novi police officer Michael Wilson testified that he was assigned to investigate a robbery at the Novi Vintage Wine Shoppe. He became aware that Petitioner was being held in Livonia and was a suspect in the Novi robbery. Officer Wilson interviewed Petitioner after advising him of his *Miranda* rights. Petitioner told Officer Wilson that he had eaten, slept, felt well, and did not have any mental problems. Officer Wilson laid out the evidence police had incriminating Petitioner in the robbery. Initially, while Petitioner acknowledged the evidence against him, he suggested it was circumstantial. Ultimately, Petitioner admitted to his participation in the Novi robbery. Officer Wilson testified that neither he nor his partner promised Petitioner anything in exchange for Petitioner's statement. Petitioner divulged that he was concerned about his niece's well-being and whether she would be able to pay the rent if he was not around to get his tax refund. Officer Wilson denied offering to assist Petitioner in any way in return for a statement.

Petitioner testified that he gave a statement to Novi police because he was worn down and tired from being questioned by several different agencies. He was also tired because he had not slept well – he was on suicide watch and therefore awakened every

hour. Petitioner further testified that he was concerned about his niece, who was eight-and-a-half months pregnant and needed Petitioner's tax refund to pay the rent. He was concerned that he would not be able to file his tax return. He claims that Detective Prough, the Livonia officer in charge of the investigation, told him that he would help him get the taxes filed. Notably, he did not testify that Detective Prough promised to do so only if he gave a statement.

Following the *Walker* hearing, the trial court issued an opinion denying Petitioner's motion to suppress. The trial court held:

> The facts and circumstances surrounding Defendant's arrest, detention, interrogation and admissions establish that Defendant voluntarily, intelligently and knowingly agreed to speak with representatives from various police agencies about recent robbery cases. The Court finds that Defendant was not compelled to talk with the police and was never oppressed, threatened, beaten or deprived of any sustenance.

7/1/09 Opinion and Order, at 1, ECF No. 13-2, Pg. ID 710.

The Michigan Court of Appeals also denied this claim, ultimately deferring to the trial court's credibility determination. The Michigan Court of Appeals noted that the trial court, in finding Petitioner's statement voluntarily and knowingly made, found Detective Wilson's assessment of Petitioner's physical and mental state more credible than Petitioner's self-assessment. *Mayes*, 2011 WL 1519355 at *3-4. The state court of appeals held that the record supported the trial court's credibility determination and found "no evidence that defendant's decision to waive his *Miranda* rights was coerced or that he did not have the requisite level of comprehension." *Id. at *4.*

The Fifth Amendment privilege against compulsory self-incrimination bars the admission of involuntary confessions. *Colorado v. Connelly*, 479 U.S. 157, 163-64 (1986). A confession is considered involuntary if: (1) the police extorted the confession by means of coercive activity; (2) the coercion in question was sufficient to overbear the will of the accused; and (3) the will of the accused was in fact overborne "because of the coercive police activity in question." *McCall v. Dutton*, 863 F.2d 454, 459 (6th Cir.1988).

The decision of the state court to credit the police officers' testimony and not Petitioner's testimony is "presumed to be correct ." 28 U.S.C. § 2254(e)(1); see also *Ramonez v. Berghuis*, 490 F.3d 482, 490-91 (6th Cir. 2007) (noting that § 2254(e)(1) standard of review applies to a state court's credibility determinations in the context of a hearing on a motion to suppress a confession). Petitioner, therefore, bears "the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1). Petitioner has not satisfied this burden. Petitioner was interviewed by several different agencies, but the record shows that the interviews were not unduly long, nor was Petitioner deprived of any basic needs during the interviews. Other than Petitioner's own testimony that officers agreed to help his niece in exchange for a statement, which the state courts did not credit, there is no evidence that police offered Petitioner such a deal. Petitioner disagrees with the state court's credibility determination but has not offered any specific evidence in support of his claim. This falls far short of the clear and convincing evidence required to challenge the state court's credibility determination. Considering the

totality of these circumstances, the Michigan Court of Appeals' decision that Petitioner's statements were made voluntarily, knowingly, and intelligently was not contrary to or an unreasonable application of federal law.

### C. Prosecutorial Misconduct Claim

Next, Petitioner seeks habeas relief on the ground that the prosecutor knowingly presented false testimony from two police officers. Respondent argues that this claim is procedurally defaulted. The Court does not find it necessary to address the question of procedural default. It is not a jurisdictional bar to review of the merits of an issue, *Howard v. Bouchard*, 405 F.3d 459, 476 (6th Cir. 2005), and "federal courts are not required to address a procedural-default issue before deciding against the petitioner on the merits," *Hudson v. Jones*, 351 F.3d 212, 215 (6th Cir. 2003) ( citing *Lambrix v. Singletary*, 520 U.S. 518, 525 (1997)). Application of a procedural bar would not affect the outcome of this claim and it is more efficient to proceed directly to the merits.

The "clearly established Federal law" relevant to a habeas court's review of a prosecutorial misconduct claim is the Supreme Court's decision in *Darden v. Wainwright*, 477 U.S. 168, 181 (1986). *Parker v. Matthews*, — U.S.—, 132 S. Ct. 2148, 2153, (June 11, 2012). In *Darden*, the Supreme Court held that a "prosecutor's improper comments will be held to violate the Constitution only if they 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" *Id.* (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974)). This Court must ask whether the Michigan Court of Appeals' decision denying Petitioner's prosecutorial misconduct claims "'was so

13

lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" *Parker*, — U.S. at —, 132 S. Ct. at 2155, (quoting *Harrington*, 562 U.S. at 103).

First, Petitioner argues that Livonia police officer Brian Duffany perjured himself when he testified regarding his reasons for pulling over Petitioner's vehicle. Petitioner claims that Officer Duffany's testimony that he pulled over Petitioner's vehicle because Petitioner matched a description of the Novi suspect relayed to him at the start of his shift was false. Petitioner argues that the prosecutor endorsed the perjury when he summarized Officer Duffany's testimony in closing argument. The Michigan Court of Appeals rejected the factual premise for this claim, finding that Officer Duffany did not testify that he was given a description of the Novi robbery suspect; instead, he testified that he was given a description of the vehicle suspected in the Novi robbery, and that the prosecutor's closing argument accurately summarized Officer Duffany's testimony. *Mayes*, 2011 WL 1519355 at *5. The Michigan Court of Appeals also rejected Petitioner's second false-testimony claim regarding testimony from Novi Police detective Wilson as similarly unsupported by the transcript. Petitioner claimed that Detective Wilson testified falsely regarding surveillance video. He claims that Detective Wilson identified "photos taken from some unknown camera, of some unknown robber" as Petitioner. Petition at 9 (ECF No. 1, Pg. ID 9). The Michigan Court of Appeals held that Petitioner failed to show the testimony was false or, even assuming that it was, that the prosecution knew the testimony was false. *Mayes*, 2011 WL 1519355 at *4.

Petitioner mischaracterizes Officer Duffany's testimony in his petition. As pointed out by the Michigan Court of Appeals, Officer Duffany testified that he initiated a traffic stop of the gold vehicle based upon a description he received of the vehicle involved in the Novi robbery, not based upon a description of the perpetrator. Petitioner also misrepresents Detective Wilson's testimony regarding the surveillance video. Detective Wilson did not, as Petitioner claims, testify that the surveillance video showed Petitioner robbing the Novi store. Instead, Detective Wilson simply identified the surveillance videotape as a copy he received from a neighboring business. Petitioner fails to show that either witness testified falsely, or that the prosecution knowingly offered any perjured testimony. Petitioner's arguments, contradicted by the record, fall far short of establishing that the Michigan Court of Appeals' decision was "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington*, 562 U.S. at 103.

### D. Ineffective Assistance of Counsel Claim

Finally, Petitioner seeks habeas relief on the ground that his defense counsel was ineffective for failing to impeach prosecution witnesses and failing to object to the admission of video surveillance footage.

To establish that he received ineffective assistance of counsel, a petitioner must show, first, that counsel's performance was deficient and, second, that counsel's deficient performance prejudiced the petitioner. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). A petitioner may show that counsel's performance was deficient by establishing that counsel's performance was "outside the wide range of professionally competent assistance." *Id.* at 689. This "requires a showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment." *Id.* at 687.

To satisfy the prejudice prong, a petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694. A court's review of counsel's performance must be "highly deferential." *Id.* at 689. Habeas relief may be granted only if the state-court decision unreasonably applied the standard for evaluating ineffective-assistance-of-counsel claims established by *Strickland*. *Knowles v. Mirzayance*, 556 U.S. 111, 122-23 (2009). "The question is not whether a federal court believes the state court's determination under the *Strickland* standard was incorrect but

whether that determination was unreasonable – a substantially higher threshold." *Id.* at 123 (internal quotation omitted).

Petitioner argues that counsel should have challenged the admissibility of video surveillance from a neighboring business showing the parking lot of the Vintage Wine Shoppe and the suspect vehicle. The Michigan Court of Appeals held that this evidence was properly admitted under state law. *Mayes*, 2011 WL 1519355 at *6. Counsel cannot be ineffective for failing to object to the admission of properly admitted evidence. *See Bradley v. Birkett*, 192 F. App'x 468, 475 (6th Cir. 2006).

Petitioner's remaining ineffective assistance of counsel claim concerns allegations that his attorney should have more effectively cross-examined prosecution witnesses. His claims in this regard are vague and unsupported by references to specific witnesses or potential lines of questioning. These conclusory allegations are insufficient to establish that his attorney performed deficiently.

## IV. Certificate of Appealability

Federal Rule of Appellate Procedure 22 provides that an appeal may not proceed unless a certificate of appealability (COA) is issued under 28 U.S.C. § 2253. Rule 11 of the Rules Governing Section 2254 Proceedings now requires that the Court "must issue or deny a certificate of appealability when it enters a final order adverse to the applicant."

A COA may be issued "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. §2253(c)(2). A petitioner must show "that reasonable jurists could debate whether (or, for that matter, agree that) the petition should

have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Slack v. McDaniel,* 529 U.S. 473, 484 (2000) (citation omitted).

The Court concludes that reasonable jurists could debate its resolution of Petitioner's claim that his confession should have been suppressed. The Court concludes that reasonable jurists would not debate its denial of Petitioner's remaining claims. Thus, the Court grants in part and denies in part a COA.

## V. Conclusion

For the reasons stated above, Petitioner's petition for a writ of habeas corpus is DENIED. Furthermore, the Court GRANTS a certificate of appealability on Petitioner's custodial statement-related claim and DENIES a certificate of appealability with respect to the remaining claims. The Court finds Petitioner may proceed on appeal *in forma pauperis* because an appeal could be taken in good faith. 28 U.S.C. § 1915(a)(3).

SO ORDERED.

S/Arthur J. Tarnow
Arthur J. Tarnow
Dated: June 20, 2016            Senior United States District Judge

I hereby certify that a copy of the foregoing document was served upon parties/counsel of record on June 20, 2016, by electronic and/or ordinary mail.

S/Catherine A. Pickles
Judicial Assistant